NOT FOR PUBLICATION                                                                                          CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA ANDERSON,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No.: 09-2939 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

  Presently before this Court is Plaintiff Linda Anderson's appeal seeking a review of a final determination by the Administrative Law Judge ("ALJ") denying Plaintiff's application for disability insurance benefits. The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court has reviewed the parties' submissions in support of and opposition to the appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court holds that the ALJ's determination is not supported by substantial evidence and remands the matter for further consideration in accordance with this Opinion.

**I.  FACTS AND PROCEDURAL HISTORY**

  On November 28, 2005, Plaintiff filed a Title II application for disability and disability insurance benefits. Plaintiff alleged a disability beginning July 11, 2005. On May 5, 2006, Plaintiff's claim was denied. The denial was affirmed upon reconsideration. Plaintiff then filed

a Request for Hearing before ALJ Richard West on July 9, 2007. Plaintiff's request was granted, and a hearing was held on November 21, 2008. Judge West denied the claim, finding that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act. Plaintiff filed an administrative appeal. On May 7, 2009, the Appeals Council affirmed the ALJ's decision. The present appeal followed.

The record indicates that Plaintiff worked as a billing clerk prior to her alleged disability. At the time of the November 21, 2008, hearing Plaintiff was over 60 years of age and weighed 238 pounds. (R. at 27, 176.) At the hearing, Plaintiff testified that her prior job duties consisted of regular lifting and carrying from 10 to 50 pounds of weight. (Id. at 31-32.) Plaintiff also testified that her occupation required approximately four hours of walking, one hour of standing, and two to three hours of sitting per day. (Id. at 31.) At the hearing, Plaintiff complained that she experiences chest pain a few times a week that last for about ten minutes, that she can get water in her legs if she sits too long or eats certain foods, and that she begins to experience back pain after fifteen minutes of standing or walking. (Id. at 28-29, 33.) Plaintiff also testified that she can lift a gallon of milk or five pounds of potatoes and is able to perform some small household chores, including cooking light meals for herself, going to the library and reading the paper, and cleaning the dishes. (Id. at 33-35, 37.) She testified that her "children do the heavier housework." (Id. at 34.) Finally, Plaintiff testified that she suffered from a heart attack in July 2005, and that, thereafter, she was hospitalized for heart failure and was put on a breathing monitor. (Id. at 23.)

The Clara Maass Medical Center's medical records for Plaintiff show a diagnosis of hypertensive heart and renal disease, congestive heart failure, atrial fibrillation, and coronary

atherosclerosis.  (Id. at 187, 192.)  A few months after her heart attack, on January 16, 2005, Plaintiff was re-admitted to Clara Maass for chest pain and a racing heart beat.  (Id. at 177.)  The diagnosis was atrial fibrillation, mitral valve insufficiency, arterial embolism or thrombosis of lower extremity, rheumatic heart failure, obesity, and essential hypertension.  (Id. at 177-78.)

Dr. Ronald Viscuso, a physician at Nephrological Associates, opined that Plaintiff was unable to work because of the severity of her medical conditions, which he diagnosed as chronic renal disease stage III/IV, hypertension, hypercholesterolemia, secondary hyperparathyroidism, and aortic stenosis and insufficiency.  (Id. at 369.)   Plaintiff reports seeing Dr. Viscuso every month for over five years.  (Id. at 39.)  Another physician, Dr. Criscito, has been treating Plaintiff every three months for over seven years.  (Id. at 38-39.)  Dr. Criscito has diagnosed Plaintiff as having congestive heart failure.  (Id. at 332, 336.)  Dr. Criscito concluded that Plaintiff could not lift, carry, push, or pull any weight greater than five pounds, and that she is "limited to minimal daily tasks."  (Id. at 335-36.)  Based on Plaintiff's severe valvular heart disease with atrial fibrillation, Dr. Criscito further opined that Plaintiff cannot work.  (Id. at 368.)

Maria Viscuso, M.D., another treating doctor, concluded that Plaintiff suffers from mitral stenosis, pain and edema in the lower extremities, chronic kidney disease, hypertensive cardiomyopathy, and atrial fibrillation.  (Id. at 403-04.)  This prevents Plaintiff from sitting for long periods of time and puts Plaintiff at less than a sedentary residual capacity.  (Id. at 403-04, 409-11.)  Lastly, an echocardiogram dated January 10, 2008, indicated that Plaintiff suffered from rheumatic heart disease with aortic valve disease and aortic stenosis.  (Id. at 397-98.)

A social security medical expert, Dr. Martin Fechner, who has not treated Plaintiff, reviewed her medical records and her testimony.  Dr. Fechner determined that Plaintiff "had a

residual functioning capacity [("RFC")] of sedentary, [limited only by] . . . occasional bending and crouching and no crawling." (Id. at 16.) He opined that Plaintiff's high blood pressure and atrial fibrillation seemed under control. (Id.) He was of the opinion that Plaintiff's heart pumps blood properly, that she does not suffer renal failure, and that her shortness of breath was not coronary artery disease or caused by her heart (but rather was caused by stress). (Id.)

## II.   LEGAL STANDARD

### A. Determining Disability

Pursuant to the Social Security Act, a claimant is required to show that he is disabled based on his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into consideration his age, education, and work experience, disability will be evaluated by the claimant's ability to engage in any form of substantial gainful activity existing in the national economy. Id. at § 423(d)(2)(A). If he can perform substantial gainful activity within the national economy, then he will not be considered disabled. Id. Each claimant's disability is determined individually based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 461 (1983)); 42 U.S.C. § 405(b)(1).

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. At step one, the plaintiff must establish that he is not currently engaging in substantial gainful activity. Id. at § 404.1520(a)(4)(i). If the plaintiff is engaged in substantial gainful

activity, the claim for disability benefits will be denied. Id.; see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987)). At step two, if the plaintiff is not working, he must establish that he suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the plaintiff fails to demonstrate a severe impairment, the ALJ must deny disability benefits. Id.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 404.1520(a)(4)(iii); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If it does, the plaintiff is automatically disabled. 20 C.F.R. § 404.1520(d). The Third Circuit has required that, in determining whether the plaintiff's impairments meet or equal any of the listed impairments, the ALJ identify relevant listed impairments, discuss the evidence, and explain his reasoning. See Burnett, 220 F.3d at 119-20. Conclusory statements at this step of the analysis are inadequate and render the decision "beyond meaningful judicial review." Id. at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four. An step four, the ALJ must consider whether the plaintiff "can still do [his] past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). "This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past

relevant work." Burnett, 220 F.3d at 120.

The plaintiff "bears the burden of proof for steps one, two and four of [the five-step] test." Sykes, 228 F.3d at 263. Neither side bears the burden of proof in step three because "step three involves a conclusive presumption based on the listings." Id. at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5)).

If the plaintiff cannot perform the past work, the analysis proceeds to step five. In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform. 20 C.F.R. §404.1520(a)(4)(v); see also Sykes, 228 F.3d at 263. In demonstrating that there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education and work experience. 20 C.F.R. § 404, Subpt. P, App. 2. However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments,[1] "the government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels." Sykes, 228 F.3d at 269-70. Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation.

---

[1] Under the Code of Federal Regulations, impairments can be either exertional or non-exertional. Exertional impairments affect the plaintiff's "ability to meet the strength demands of jobs" in terms of "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a. All other impairments are considered non-exertional. Id.; see also Sykes, 228 F.3d at 263.

Id. at 273; see also Burnett, 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids, including . . . testimony of a vocational expert."). If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled.

### B. Standard of Review

"Substantial evidence" is the standard of proof in disability insurance benefit cases. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). The court has a duty to review the evidence in its totality and decide whether the ALJ's determination was reasonable. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). The court gives deference to the administrative findings and decision, but it also must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). The court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Sullivan, 970 F.2d at 1182. To assist the court in this process, an ALJ must explain the rationale behind his decision. And, where there is conflicting medical evidence, the ALJ must adequately explain in the record his reasons for rejecting competent evidence. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). An ALJ may reject testimony of subjective complaints where it is not consistent with the medical evidence. See, e.g., Burns v. Barnhart, 312 F.3d 113, 130-31 (3d Cir. 2002).

### III. DISCUSSION

#### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the period beginning July 11, 2005, through December 23, 2008. At step two, the ALJ concluded that, during the relevant time period, Plaintiff "has the following severe impairments: atrial fibrillation, post status acute myocardial infarction, kidney disease, dyspnea, right leg thrombectomy, hypertension and obesity." (R. at 12.) At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Id.) Since Plaintiff did not meet a listed impairment under step three, the ALJ proceeded to step four. At step four, the ALJ relied upon the opinion of Dr. Fechner in determining that Plaintiff had the RFC to perform sedentary work with limited bending, crouching, and crawling. The ALJ then determined that Plaintiff is capable of performing her past relevant work as a billing clerk in light of her RFC. Consequently, the ALJ determined that Plaintiff was not disabled from the period beginning July 11, 2005 through December 23, 2008.

#### B. Analysis

1. Step Three - Impairment Listings

Plaintiff argues that the ALJ erred in finding that she did not have a listed impairment.

*4.02 Chronic Heart Failure*

Plaintiff argues that she should have met Listing 4.02 for chronic heart failure because she sustained an acute myocardial infarction with acute respiratory failure, and because she has also been diagnosed with hypertensive heart and renal disease, atrial fibrillation, and coronary

atherosclerosis. Plaintiff refers to Dr. Criscito's diagnosis that she had congestive heart failure, and his conclusion that she should avoid stressful environments and is limited in her daily tasks. She also cites to Dr. Viscuso's opinion that she is at less than sedentary residual functioning capacity, that she cannot work, and that she cannot sit for long period of time. Plaintiff also notes that, as required under the Listing, she suffers from dyspnea, fatigue, and chest discomfort.

Defendant argues that in order to meet this listing, there must be an "extreme limitation," and that Plaintiff's testimony and the evidence does not support such a finding. Plaintiff testified that she lived by herself, could shower, dress, do the dishes, sweep the floor, cook light meals, and do other household chores without assistance. Defendant argues that there is no evidence of three or more episodes of acute congestive heart failure over a twelve month period or that any episodes occurred after her hospitalization in 2005. Defendant further points out that Dr. Fechner concluded that Plaintiff's congestive heart failure was no longer present.

The ALJ found that "chronic heart failure is not met as the claimant has not had systolic failure (see 4.00D1a(i)), or diastolic failure (see 4.00D1a(ii)), resulting in persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living . . . ." (R. at 12.) The record indicates that Plaintiff suffers from dyspnea, fatigue, and chest discomfort. (Id. at 10.) The record also contains various opinions from Plaintiff's treating physicians regarding her congestive heart failure. The ALJ does not explain whether this evidence was considered, and, if so, why it was rejected.

*4.07 Valvular Heart Disease*

Plaintiff also argues that the ALJ should have found that she met Listing 4.07 for valvular heart disease. Plaintiff reasons that, pursuant to the listing, the acute myocardial infarction is the

equivalent of an impaired myocardial function that caused the infarction.  Plaintiff contends that she has the following requisite findings: re-current arrhythmias, atrial fibrillation, rheumatic heart disease with aortic valve disease, and aortic stenosis with two plus aortic regurgitation and one plus mitral regurgitation.

On the other hand, Defendant argues that, "[e]ven during Plaintiff's hospitalization for myocardial infarction, however, coronary angiography revealed that her coronary arteries were 'normal' and 'widely patent with no obstructive lesions or significant luminal irregularities.'" (Def.'s Br. at 18.)  Defendant points out that Plaintiff did not have an exercise tolerance test, that she has never had angioplasty or bypass surgery, that there is no evidence of an episode of cardiac syncope or near syncope, that there is no evidence that Plaintiff has lost consciousness at all or due to an arrhythmia, that she never suffered a stroke, and that she did not have, as required by the listing, "sensory or motor aphasia resulting in ineffective speech or communication" or "significant and persistent disorganization of motor function in two extremities."  (Id. at 19.)

In determining whether Plaintiff's impairments meet Listing 4.07, the ALJ states only that Plaintiff "did not have documented cardiac enlargement, ventricular dysfunction, impaired myocardial function, coronary artery disease, recurrent arrhythmias or other requisite findings . . . ."  (R. at 13.)  The ALJ did not discuss any of the evidence in the record that appears to the contrary.  For example, there is evidence in the record: (1) that Plaintiff suffered an acute myocardial infarction (equivalent to impaired myocardial function); (2) that she has been diagnosed with hypertensive heart, congestive heart failure, atrial fibrillation and coronary atherosclerosis; (3) that she suffered re-current arrhythmias on January 16, 2005, when she was re-diagnosed with atrial fibrillation; and (4) that she suffered from rheumatic heart disease with

aortic valve disease and aortic stenosis. (Id. at 187, 192, 397-98.) These medical findings, which do not appear to be consistent with the ALJ's ruling, are not discussed by the ALJ.

*6.02 Renal Function*

Plaintiff argues that if a claimant is receiving hemodialysis for chronic renal failure, then the impairment should be met under Listing 6.02(A). Plaintiff testified that she had an access put in her arm for the purpose of receiving dialysis. Defendant argues that Plaintiff was not receiving dialysis, but had instead been prepared for future dialysis or for an emergency via the placement of a vascular access point in her arm. Defendant points out that nowhere in the records or reports of Plaintiff's treating physicians did they refer to ongoing dialysis, and that one of the charts describes the vascular access placed in her arm as being "in case of emergency." (Def.'s Br. at 20.) Defendant argues that this does not qualify as chronic hemodialysis or peritoneal dialysis as required by the listing. While such evidence may support the ALJ's decision, the ALJ does not mention that Plaintiff testified that she was receiving hemodialysis nor is it discernable from the opinion whether he considered that information in his analysis.

*6.06 Nephrotic Syndrome*

Plaintiff argues that, in failing to calculate her glomerular filtration rate (GFR), the ALJ ignored significant factors in determining the severity of kidney disease for this listing. Defendant argues that Plaintiff never suffered from anasarca, which is necessary under Listing 6.06. Defendant also asserts that Plaintiff did not meet the listing requirements because "[t]he record does not indicate urine testing indicating proteinuria at the required levels, and blood testing consistently showed Plaintiff's serum albumin to be 4.2 g/dL or above." (Id.) Defendant

further contends that the ALJ did not err in not calculating the GFR because "[t]he calculation is not a component of the listing as written." (Id.)

There is no explicit requirement that the ALJ calculate GFR in making his decision. But, even according to Dr. Fechner, Plaintiff's right kidney does not work at all and her left kidney only works at 30%. (R. at 16.) Dr. Fechner opined that this condition was "'not great,' [but] it is not renal failure either." (Id.) A review of the ALJ's opinion does not reconcile this opinion with the opinion of Plaintiff's treating physicians. For example, Dr. Viscuso diagnosed Plaintiff with chronic renal disease stage III/IV and opined that "due to the severity of her medical status she is unable to work." (Id. at 369.)

Based on the foregoing, this Court finds that the ALJ's failure to provide an explanation detailing why he rejected or discredited conflicting evidence with respect to the above Listings renders his decision incapable of meaningful judicial review. Additionally, as discussed below, the Court finds that the ALJ failed to adequately consider and evaluate whether the combined effects of Plaintiff's impairments met any of the listed impairments. As a consequence, the Court finds that there is a lack of substantial evidence supporting the ALJ's conclusion at step three.

Under 20 C.F.R. § 404.1526(b)(3), an ALJ must consider, in the event of more than one impairment, if the combination of impairments equals any listed impairment. Plaintiff argues that the ALJ did not adequately consider the effect of her obesity, high blood pressure, and medication in his analysis at step three. The ALJ's opinion stated that "[o]besity has been taken into consideration when considering all of the claimant's impairments as required . . . including the assessment of whether or not the claimant's impairments meet or medically equal one of the listed impairments as well as with consideration of the claimant's residual functional capacity."

(R. at 13.) The ALJ then stated that "[h]ypertension has also been taken into consideration both alone and with its effects regarding the claimant's other impairments." (Id. at 14.) While these statements clearly acknowledge Plaintiff's obesity and hypertension, the ALJ provides no explanation as to the manner in which these conditions were considered, and if, or why, the ALJ found them not significant when reviewed in light of the other evidence on record. Additionally, there is no indication that the ALJ took into account the effects of Plaintiff's prescription medications. Thus, the record does not reveal sufficient analysis by the ALJ as to why Plaintiff's combination of impairments does not meet or medically equal a listed impairment.

Upon remand, the ALJ must consider the conflicting evidence in the record and provide a thorough analysis which justifies the acceptance or rejection of such evidence. In particular, the ALJ must address conflicting medical evidence. In light of this analysis, then, the ALJ must more clearly explain why Plaintiff's impairments do not meet the identified listings, including why her combined impairments do not meet or medically equal a listed impairment.

2. Step Four - Past Relevant Work

The ALJ found at step four that Plaintiff was capable of performing her past relevant work. Plaintiff argues that the ALJ failed to consider her actual past work duties and misapplied the medical-vocational guidelines. Plaintiff cites Burnett to argue that "[i]t is clear error to make a past relevant work determination that is contrary to uncontroverted evidence presented by the claimant." 220 F.3d at 123. The Third Circuit in Burnett stated that "[t]he *claimant* is the *primary source* for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." Id. (emphasis in original). Plaintiff argues that she

testified that her job duties as the hospital billing clerk consisted of walking/being on her feet for four hours a day, sitting for about two or three hours, standing for about an hour, and lifting weight of up to 50 pounds, although usually 10 pounds.  She asserts that "the ALJ, without explanation, rejected [her] testimony in regards to her job duties and attempted to redefine her job as a billing clerk which requires a [RFC] of 'Sedendary.'" (Pl.'s Br. at 17.)  Further, Plaintiff argues that had the ALJ "credited her testimony, [he] would have had to conclude, in view of her treating doctor's finding as well as the testimony of Social Security expert, Dr. Fechner, that the claimant's ability to perform light or sedentary work was highly unlikely." (Id.)

The Court finds that the ALJ failed to explain why Plaintiff's testimony regarding her job duties was discredited or rejected.  He also failed to adequately explain why he rejected the medical opinions of her treating physicians regarding her functional capacity to do work.  Therefore, upon remand, the ALJ must better explain the reason for his finding that Plaintiff is capable of performing her past relevant work at step four.

       3.      <u>Medical Opinions</u>

In general, Plaintiff argues that the ALJ did not give proper weight to the opinions of her treating physicians and erred by giving greater weight to the opinion of a Social Security expert, Dr. Fechner, who did not examine or treat Plaintiff.  Plaintiff points out that all three of her treating physicians concluded that she is unable to work because of her medical conditions.  However, the ALJ, in reaching his decision, accepted and appears to have given greater weight to Dr. Fechner's conclusion that Plaintiff is at a sedentary RFC.  The ALJ states that "Dr. Fechner's opinion is substantiated by the record as a whole, including the claimant's testimony, and given greater weight." (R. at 17.)  The ALJ states: "The undersigned reiterates that he does not reject

the treating doctor's diagnoses or findings, but simply concludes that they do not reduce the claimant to a less than sedentary [RFC]." (Id.) Although the ALJ is entitled to reach this conclusion, in order for there to be an opportunity for meaningful judicial review by this Court, the ALJ must explain why the treating doctor's opinions as to vocational limitations are not substantiated by the record. Without such an explanation, this Court is unable to understand and evaluate the basis for the ALJ's finding.

Although their reports contain some inconsistencies, three separate physicians, each of whom treated Plaintiff regularly for a prolonged period of time, concluded that she was not fit for work. Their opinions are a reflection of years of treatment, examination, and evaluation of Plaintiff. Dr. Fechner's opinion, on the other hand, is that of a non-treating doctor. Although his opinion may certainly be relied on, any such reliance should be viewed with a prudent level of scrutiny and must supported by solid reasoning. Under the regulations of the Social Security Act, "[a] statement by a medical source that a claimant is 'disabled' or 'unable to work' does not mean that [the Social Security Administration ("SSA")] will determine that the [claimant is] disabled." 20 C.F.R. § § 404.1527(d), 416.927(e). But, the Social Security Administration generally gives "more weight to the opinion of a source who has examined [the claimant]. 20 C.F.R.§ § 404.1527(d), 416.927(d). Further, "the longer a treating source has treated [the claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the SSA] will give to the source's medical opinion." Id. Nevertheless, an ALJ is entitled to give less weight to a treating physician in consideration of his explanation of any inconsistent medical evidence.

The Court finds that the ALJ's findings in reliance on Dr. Fechner's opinion, without a more detailed analysis and explanation regarding the treating physicians' opinions, is incapable of meaningful judicial review. Also, although the ALJ gave controlling weight to Dr. Fechner's opinion, which he believed was substantiated by the record as a whole, he offered no insight into how he reached that belief. Therefore, upon remand, the ALJ shall explain the consideration given to the treating physician's opinions and give the reasons for why their opinions as to Plaintiff's vocational limitations are not substantiated by the medical record.

### IV.  CONCLUSION

For all of the reasons set forth above, this Court finds that the ALJ's decision that the Plaintiff was not disabled within the meaning of the Social Security Act was not supported by substantial evidence. The matter is remanded for further analysis in accordance with this Opinion. An appropriate Order accompanies this Opinion.

DATED: September 24, 2010          /s/ Jose L. Linares
                                    JOSE L. LINARES
                                    UNITED STATES DISTRICT JUDGE